# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SHAUN FAULEY, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 15 C 2171 |
| v. | ) ) | Judge Jorge L. Alonso |
| HESKA CORPORATION and JOHN DOES 1-10, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff alleges that defendants violated the Telephone Consumer Protection Act ("TCPA") by sending him a fax advertisement, which did not contain an opt-out notice, without his permission or invitation. The case is before the Court on defendant Heska's motion to stay. For the reasons set forth below, the Court denies the motion.

## Background

"In 2005, Congress enacted the Junk Fax Prevention Act, which amended the fax advertising provisions of the TCPA." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd 13998, 14000 (Oct. 30, 2014) ("Opt-Out Order") (footnote omitted). In relevant part, the amendments state that it is unlawful:

> (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless –
> (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;
> (ii) the sender obtained the number of the telephone facsimile machine through –
> (I) the voluntary communication of such number, within the context of such established business

> > relationship, from the recipient of the unsolicited advertisement, or
> > (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before the date of enactment of the Junk Fax Prevention Act of 2005 if the sender possessed the facsimile machine number of the recipient before such date of enactment; and
> > (iii) the unsolicited advertisement contains [an opt-out] notice meeting the requirements under paragraph (2)(D).

*See* Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, § 2, 119 Stat. 359 (2005); 47 U.S.C. § 227(b)(1)(C).

Subsequently, the Federal Communications Commission ("FCC") promulgated regulations implementing the Junk Fax Prevention Act, which make it unlawful to:

> (4) Use a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine, unless –
> > (i) The unsolicited advertisement is from a sender with an established business relationship . . . with the recipient; and
> > (ii) The sender obtained the number of the telephone facsimile machine through –
> > > (A) The voluntary communication of such number by the recipient directly to the sender, within the context of such established business relationship;
> > > . . . .
> > > (C) This clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005 if the sender also possessed the facsimile machine number of the recipient before July 9, 2005. . . ; and
> > (iii) The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. . . .
> > (iv) A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a)(4)(iii) of this section.

47 C.F.R. § 64.1200(a)(4).

Thereafter, a number of entities petitioned the FCC for a declaratory ruling that the requirement that opt-out notices be included in faxes sent with recipients' express prior consent was invalid. *See* Opt-Out Order at 14001. In response to these petitions, the FCC issued the Opt-Out Order, which "affirm[ed] that the [FCC's] rules require that an opt-out notice must be contained on all fax ads," even those sent to consumers who "previously agreed to receive fax ads from such senders." *Id.* at 13998, 14005. However, the Opt-Out Order also stated that there was:

> [An] inconsistency between a footnote contained in the *Junk Fax Order* and the rule [that] caused confusion or misplaced confidence regarding the applicability of th[e] [opt out] requirement to faxes sent to those recipients who provided prior express permission. Specifically, the footnote stated that "the opt-out notice requirement only applies to communications that constitute *unsolicited* advertisements." The use of the word "unsolicited" in this one instance may have caused some parties to misconstrue the Commission's intent to apply the opt-out notice to fax ads sent with the prior express permission of the recipient.

*Id.* at 14009 (footnotes omitted) (emphasis in original). As a result, the FCC retroactively waived application of the opt-out requirement to the petitioners and gave similarly-situated parties six months to seek retroactive waivers as well. Three appeals from the Opt-Out Order have been consolidated and are pending before the United States Court of Appeals for the District of Columbia Circuit. (*See* Def.'s Mot. Stay, Ex. 3, Consol. Order.)

On March 12, 2015, plaintiff filed this suit alleging that defendants violated the TCPA by faxing an advertisement to him and putative class members "without the required opt out language . . . [and] without first receiving [plaintiff's] express permission or invitation." (Compl. ¶ 16; *see id.* ¶ 19 (defining putative class as all people to whom defendants faxed ads without "prior express permission or invitation").)

3

On April 14, 2015, Heska filed a petition with the FCC for a retroactive waiver of the opt-out rule. (Def.'s Mot. Stay, Ex. 1, Pet. Waiver.) Heska now asks the Court to stay these proceedings pending the FCC's resolution of the waiver petition.

**Discussion**

In its motion to stay, Heska invokes the primary jurisdiction doctrine, which applies when:

> "[E]nforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation."

*Ryan v. Chemlawn*, 935 F.2d 129, 131 (7th Cir. 1991) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)). The policy reasons that animate the doctrine include: (1) "promot[ing] consistency and uniformity, particularly where the development of the law is dependent to some degree upon administrative policy"; (2) employing the expertise of agencies "to resolve the complexities of certain areas which are outside the conventional experience of the courts"; and (3) promoting "judicial economy because the dispute may be decided within the agency, thus obviating the need for the courts to intervene." *Id.* In this circuit, "[t]here is no fixed formula for the invocation of the doctrine of primary jurisdiction." *Id.* (quotations omitted). Rather, "the decision whether to apply it depends upon a case by case determination of whether, in view of the purposes of the statute involved and the relevance of administrative expertise to the issue at hand, the court ought to defer initially to the administrative agency." *Id.* (quotations omitted).

The circumstances of this case do not warrant a stay. First, it is not clear what impact, if any, a waiver would have on this litigation. *See Physicians Healthsource, Inc. v. Stryker Sales Corp.*, No.

4

1:12-CV-0279, 2014 WL 7109630, at *14 (W.D. Mich. Dec. 12, 2014) ("[T]he FCC cannot use an administrative waiver to eliminate statutory liability in a private cause of action; at most, the FCC can choose not to exercise its own enforcement power. It would be a fundamental violation of the separation of powers for the administrative agency to 'waive' retroactively the statutory or rule requirements for a particular party in a case or controversy presently proceeding in an Article III court.") (citation omitted). Second, the waiver Heska seeks only applies to faxes sent with the recipient's prior consent, which plaintiff says he and the putative class members did not give. Thus, Heska's receipt of a waiver would not change the scope of the class or resolve the issue of consent, facts that distinguish this case from the post-Opt-Out Order cases cited by Heska. *Compare Bondhus v. Henry Schein, Inc.*, No. 14-22982-Civ, 2015 WL 1968841, at *3-4 (S.D. Fla. Apr. 30, 2015) (granting a stay, in part, because a waiver would affect the scope of the class, which was defined to include recipients who consented to receiving the contested faxes), *and Physicians Healthsource, Inc. v. Endo Pharm.*, No. 14-2289, slip op. at 1 (E.D. Pa. Jan. 5, 2015) (granting a stay and noting that "[p]laintiff asserts its claims without regard to whether the facsimile advertisements received were solicited or unsolicited"), *with True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-JST, 2014 WL 6707594, at *2 (N.D. Cal. Nov. 25, 2014) ("Because the class here is defined to include only those who received *unsolicited* faxes, the issue of waiver for those who received *solicited* faxes is not relevant. . . . [W]hether the named Plaintiffs provided consent to receive faxes . . . . [is a] factual issue [that] requires litigation, not a stay.") (emphasis in original). Third, none of the policy considerations underlying the primary jurisdiction doctrine are present here. This case does not raise any novel regulatory or technical issues that are best left to the FCC's expertise and, as Heska's receipt of a waiver would not dispose of or streamline this case, a stay would not promote judicial economy. *See Simon v. Healthways, Inc.*, No. CV 14-08022 BRO (JCx), 2015 WL 1568230, at *5 (C.D. Cal.

Apr. 7, 2015) (denying motion to stay pursuant to primary jurisdiction doctrine because defendant's waiver petition did not involve "an issue of first impression" or one that "requires uniformity of administration," and resolving plaintiff's claim did not "require[] technical expertise beyond the Court's conventional experience"). In short, a stay is not warranted under either the primary jurisdiction doctrine or the Court's inherent power to control its docket. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Accordingly, the Court denies Heska's motion to stay [30].

**SO ORDERED.**                        **ENTERED: July 6, 2015**

_____
**HON. JORGE L. ALONSO**
**United States District Judge**