IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAUN FAULEY, individually and as the representative of a class of similarly-situated persons, ) ) ) ) Plaintiff, ) ) v. ) ) HESKA CORPORATION and JOHN DOES 1-10, ) ) ) Defendants. ) | Case No. 15 C 2171  Judge Jorge L. Alonso |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Shaun Fauley brings this class action complaint against defendant Heska Corporation ("Heska") and ten unnamed defendants, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Before the Court is plaintiff's motion for class certification [118]. For the reasons set forth below, the motion is granted.

BACKGROUND

Heska provides services to veterinary professionals, including diagnostic testing services and digital imaging equipment. Plaintiff, a veterinarian, alleges that, on May 19, 2013, he received an unsolicited facsimile ("fax") advertisement from Heska. He filed this suit, alleging that defendants violated the TCPA by faxing an advertisement to him and putative class members without the required opt-out language and without express permission or invitation. Plaintiff says that, from March 2011 to July 2014, Heska sent tens of thousands of similar faxes to recipients across the United States, including 20 faxes to plaintiff, in violation of the TCPA. Heska raises a number of affirmative defenses, including that it had an established business

relationship with plaintiff, that plaintiff gave prior express invitation and/or permission, and that it has received a waiver from the FCC.

In April 2015, Heska timely filed a petition with the FCC seeking a retroactive waiver of the opt-out rule for solicited fax advertisements. On August 28, 2015, the FCC granted Heska a retroactive waiver (the "Waiver") which excused Heska for any failure to comply with the opt-out notice requirement for faxes sent prior to April 30, 2015, provided that Heska had obtained the prior express invitation or permission of the recipient to receive the fax.

Near the close of discovery, Heska submitted its Fifth Supplemental Disclosures to plaintiff, which included affidavits from certain Heska employees, a sample of Heska Customer Account files, evidence from Heska's purported "reconfirmation campaign," and requests to be excluded from the class. (Dkt. 72-1.) According to this evidence, Heska maintains a customer database that was created in 1988 and contains accounts for customers and prospective customers. (Dkt. 72-2, ¶ 6.) In August 2015, Heska initiated a "reconfirmation campaign" in an attempt to obtain specific evidence showing that the customers in Heska's database gave Heska their fax numbers and consented to receive fax advertisements from Heska before the faxes were sent. (Dkts. 72-6, p. 38, 72-2, p. 4.) As part of this campaign, Heska contacted over 10,850 customers (dkt. 72-2, p. 5) and used two scripts that included the following language:

> We are updating our customer records. Can I ask for 2 minutes of your time to confirm your information? It would really help me out.
>
> Super. First, I need to tell you that Heska takes the protection of your information very seriously. We don't buy fax numbers or emails. We never sell your contact information, and we don't send communications without your consent. You control your privacy choices with Heska. You can always opt out of communications, simply by calling 1-800-GO HESKA. Ok?
>
> Great. Now, I just need to confirm three quick things;
>
> * * *

> 3ʳᵈ: Heska stopped ads by fax in 2014, but I still need to re-confirm your account's prior express consent at setup. When your FAX # was given to Heska at setup, please re-confirm that it was given along with your consent to send clinical results, order confirmations, invoices, ads, program updates, continuing education notices and other information.
>
> Can you please re-confirm this?
>
> Thanks for your time today. I appreciate it! Have a great day.

(Dkts. 72-4, 72-5.) The scripts do not mention this suit or tell the customer that Heska intended to use any "re-confirmation" results as evidence in this litigation.

Regarding the requests to be excluded, twenty-seven Heska customers completed a document entitled "Request to be Excluded from the Class." Each "request to be excluded" contains the caption of this case, is addressed "to the Court, Administrator and Parties," and states:

> 1. Heska Corporation is our vendor, has had our prior express consent to send all faxes (including ads) to our [fax] number since setting up our account, and communicates information to us via fax, email, and text that is beneficial to our business and patient welfare. We have been aware of our right to opt-out of communications from Heska Corporation.
>
> 2. We object to our inclusion, for any purpose, including but not limited to determination of damages or attorney's fees, in any class that is now being determined, or has been determined in the past, for a complaint about faxes, texts or emails between us and our vendors. We consider these communications to be a material part of our business relationships, to be solicited, and to be beneficial to our profession and clients.

(Dkt. 72-3.)

Shortly after Heska submitted its Fifth Supplemental Disclosures, plaintiff filed a motion pursuant to Rule 23(d), requesting the Court to exercise control over this action and enter appropriate orders governing the parties' conduct. (Dkt. 72.) Specifically, plaintiff sought an order from the Court (1) directing Heska to cease its efforts to "reconfirm" prior express

3

permission or use its "script"; (2) holding that Heska cannot assert a defense of "established business relationship" or "prior express invitation or permission" in light of its opt-out notice violations; (3) excluding any evidence obtained in the "reconfirmation" campaign as inappropriately obtained and as untimely under Rule 26(e); (4) invalidating any requests for exclusion obtained to date; and (5) directing that corrective notice be sent to the putative class at Heska's expense. (Dkt. 72.)

The Court referred the matter to the Magistrate Judge, who issued a Report and Recommendation granting in part and denying in part plaintiff's motion for rule 23(d) order. (Dkt. 89.) In particular, the Magistrate Judge recommended this Court to (1) deny plaintiff's request to bar the Fifth Supplemental Disclosures as untimely; (2) order defendant to cease using the script used during the reconfirmation campaign; (3) require defendant to seek court approval of any amended script it intends to use in any continued reconfirmation campaign; (4) reserve ruling on whether defendant can utilize the evidence it already obtained in its reconfirmation campaign; and (5) consider including a reference to defendant's reconfirmation campaign if notice is eventually disseminated to class members. (*Id*.)

This Court adopted the Magistrate Judge's recommendations and extended discovery for a limited purpose. (Dkts. 96, 101.) Heska later filed a motion to approve revised script, which this Court denied. (Dkt. 111.)

Plaintiff then filed a motion for class certification, seeking to certify the following class:

All persons or entities who were successfully sent one or more facsimiles regarding Heska Corporation's goods or services from March 12, 2011, through July 21, 2014, that either (1) contain no "opt-out notice" explaining how to stop future faxes or (2) contain an opt-out notice stating, "To unsubscribe from Heska's promotional faxes, please call 800-464-3752, ext. 4565 or fax (970) 619-3008, and indicate your clinic name and fax number."

4

(Dkt. 119, pg. 10.) Plaintiff also asks the Court to appoint plaintiff as class representative and to appoint plaintiff's counsel as class counsel.

## DISCUSSION

A district court may only certify a class if the class "satisfies the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the conditions of Rule 23(b)." *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 800 (7th Cir. 2017) (quotation marks and citation omitted). Plaintiff seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Seventh Circuit has also "long recognized an implicit requirement under Rule 23 that a class must be defined clearly and that membership be defined by objective criteria . . . ." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). In other words, the class sought to be certified must be ascertainable.

A class action is a departure from "the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). "District courts have broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017) (internal quotation marks and citation omitted). Plaintiffs bear the burden of showing by a preponderance of the evidence that a proposed class satisfies the Rule 23 requirements. *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012). Since class certification is an exacting standard, a court will only be satisfied that certification is proper, "after [conducting] a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of*

*S.W. v. Falcon*, 457 U.S. 147, 161 (1982). "Failure to meet any of the Rule's requirements precludes class certification." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

**The TCPA**

The TCPA generally prohibits the sending of an "unsolicited advertisement," unless the sender has an established business relationship with the recipient, the sender obtained the number through a voluntary communication, directory, advertisement, or internet site, and the fax contains a proper opt-out notice. 47 U.S.C. § 227(b)(1)(C). An advertisement is "unsolicited" when the recipient did not give "prior express invitation or permission, in writing or otherwise." *Id.* § 227(a)(5).

In 2006, the FCC issued a rule that has been referred to as the "Solicited Fax Rule." 47 C.F.R. § 64.1200(a)(4)(iv); *see also Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1080 (D.C. Cir. 2017). The Solicited Fax Rule requires senders to include an opt-out notice on fax advertisements even when the recipient has provided prior express consent to the sender. 47 C.F.R. § 64.1200(a)(4)(iv). "In other words, the Solicited Fax Rule mandates that senders of *solicited* faxes comply with a statutory requirement that applies only to senders of *unsolicited* faxes." *Bais Yaakov*, 852 F.3d at 1080 (emphasis in original).

**The FCC Waiver**

After the FCC issued the Solicited Fax Rule, a number of entities petitioned the FCC seeking to obtain a declaration that the opt-out notice requirement for solicited fax advertisements was invalid. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd 13998, 14002 ("Opt-Out Order"). On October 30, 2014, the FCC issued the Opt-Out Order, granting retroactive waivers of the opt-out requirement

6

on solicited fax advertisements under 47 C.F.R. § 64.1200(a)(4)(iv), to the petitioners. The FCC also invited similarly-situated parties to seek retroactive waivers within six months of the order.

On April 14, 2015, Heska timely filed a petition with the FCC seeking a retroactive waiver of the opt-out rule for solicited fax advertisements. On August 28, 2015, the FCC granted Heska such Waiver. (Dkt. 58-1.) The Waiver excused Heska for any failure to comply with the opt-out notice requirement for faxes sent prior to April 30, 2015, provided that Heska had obtained the prior express invitation or permission of the recipient to receive the fax. (*Id*.)

***Bais Yaakov***

Since the briefing of the motion, the landscape of the TCPA again changed. The D.C. Circuit found in *Bais Yaakov* that the Solicited Fax Rule is "unlawful to the extent that it requires opt-out notices on solicited faxes." *Bais Yaakov*, 852 F.3d at 1082. In other words, according to the D.C. Circuit, the Solicited Fax Rule is no longer valid.

Courts in this District have taken several approaches to the application of the holding in *Bais Yaakov*, with some judges taking guidance from the decision and finding that *Bais Yaakov's* holding controls in this District. *See Brodsky v. HumanaDental Ins. Co.*, 269 F. Supp. 3d 841, 851 (N.D. Ill. 2017) ("The TCPA . . . does not impose an opt-out notice on "solicited" faxes"); *A Custom & Air Conditioning, Inc. v. Kabbage, Inc.*, Case No. 16-CV-2513, 2018 WL 488257, at *3 (N.D. Ill. Jan. 18, 2018) (*Yaakov's* holding, that opt-out notices are not required on solicited faxes, is binding in the Seventh Circuit); *Alpha Tech Pet Inc. v. LaGasse, LLC*, No. 16-C-4321, 2017 WL 5069946, at *4 (N.D. Ill. Nov. 3, 2017) (same). This Court finds these cases to be persuasive and agrees that the TCPA does not impose an opt-out requirement on solicited faxes. Accordingly, this Court will not apply the Solicited Fax Rule when evaluating whether class certification is appropriate here.

**Motion for Class Certification**

Plaintiff argues all factors necessary to certify a class are present here. Heska opposes class certification on multiple grounds. The Court addresses each in turn.

I. **Ascertainability**

A class is ascertainable when it is clearly and objectively defined. *Mullins*, 795 F.3d at 657. Certification may be denied when the plaintiff defines a class that is "too vague or subjective, or when class membership [is] defined in terms of success on the merits (so-called "fail-safe" classes)." *Id.* A class may not be ascertainable when "there is no way to readily ascertain who is a member of the class." *Fauley v. Drug Depot, Inc.*, 15 C 10735, 2018 WL 587150, at *5 (N.D. Ill. Jan. 29, 2018) (citing *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 495 (7th Cir. 2012)).

Here, plaintiff's proposed class is ascertainable. It is not vague—the proposed class identifies the class as persons or businesses receiving faxes from Heska during a specific time period. It is not based on a subjective state of mind—the proposed class relies on objective criteria to determine who received a fax from defendant Heska. And it is not a fail-safe class— the proposed class is not based on the merits or the success of the case. Heska does not challenge the ascertainability of plaintiff's proposed class, and the Court finds that plaintiff's proposed class is ascertainable.

II. **Rule 23(a) requirements**

For certification, Rule 23(a) requires the putative class to meet four prerequisites, including numerosity, commonality, typicality, and adequacy of representation. *Messner*, 669 F.3d at 811.

8

### a. Numerosity

Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A plaintiff need not specify the exact number of members in a class but may not rely on conclusory allegations that numerosity has been met. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989); *see also McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) (stating that although no bright line rule exists, a class of forty is generally enough to certify a class); *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D. Ill. 1986) (noting that a class of 10-29 is enough to find numerosity). Plaintiff says the class meets the numerosity requirement. Here, experts for both parties concluded that this matter involves over 350,000 faxes sent to 21,244 fax numbers during the proposed class period. Heska does not challenge this, and the Court finds that the numerosity requirement is met.

### b. Commonality

Rule 23(a)(2) requires the certification to propose "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists when at least one question is of such a nature as being capable of class-wide resolution. *Wal-Mart*, 564 U.S. at 350; *see also Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015). A plaintiff seeking class certification must allege that all members have "suffered the same injury." *Wal-Mart*, 564 U.S. at 350 (quoting *Falcon,* 457 U.S. at 157). "A common nucleus of operative facts is usually enough to satisfy the commonality requirement." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citing *Franklin v. City of Ch.*, 102 F.R.D. 944, 949-50 (N.D. Ill. 1984)).

Plaintiff says that the following questions are common to all class members: (1) whether the faxes are "advertisements" as defined by FCC regulation; (2) whether Heska is the "sender" of the faxes as defined by the regulations; (3) whether the faxes contain the opt-out notice

9

required by the regulations, 47 C.F.R. § 64.1200(a)(4)(ii)–(iv); and (4) whether Heska "willfully or knowingly" violated the regulations, allowing this Court to treble the prescribed $500 statutory damages, and define scope of injunctive relief.

Heska argues the commonality requirement is not met because the question of whether fax-recipients consented to the faxes is not common to all the members of the proposed class. Accordingly, Heska says that commonality does not exist because individual issues predominate. Plaintiff responds that the commonality requirement has been met and that Heska's argument regarding the predominance of individual issues should be analyzed under the predominance requirement of Rule 23(b)(3). The analysis of the requirements for commonality and predominance often overlap in class certification cases. The Court finds that the commonality requirement has been met here and will address the issue of consent below.

### c. Typicality

Rule 23(a)(3) is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In other words, "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted). "Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Toney v. Quality Resources, Inc.*, 323 F.R.D. 567, 584 (N.D. Ill. Feb. 12, 2018).

Plaintiff contends that Heska acted consistently toward the entire class, and that all the claims are based on the same legal theory—the transmission of faxes in violation of the TCPA.

Heska concedes that plaintiff's claims are typical. The Court finds that plaintiff has satisfied the typicality requirement.

### d. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). A court will consider a number of factors when evaluating whether the named plaintiff properly represents the interests of the class, including "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interests of the absentee members." *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986). A class is not adequately and fairly represented if its class members have antagonistic or conflicting claims. *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993) (citing *Rosario*, 963 F.2d at 1018).

**Plaintiff.** A lead plaintiff may fairly and adequately represent a class when he "'possess[es] the same interest and suffer[s] the same injury' as the class members." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977)). Here, plaintiff says that he is qualified to represent the class because he received 20 of Heska's faxes, has no conflict of interest with the class, and is otherwise an adequate class representative. Heska disagrees, contending that plaintiff is a serial TCPA litigant who lacks standing.

The frequency of litigation that a particular plaintiff is engaged in is not determinative of whether he can adequately represent the class. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Although plaintiff has filed several TCPA class action lawsuits[1], the

---

[1] *See, e.g., Fauley v. Drug Depot, Inc.*, 323 F.R.D. 594 (N.D. Ill. 2018); *Fauley v. Royal Canin U.S.A, Inc.*, 2017 WL 2955351 (N.D. Ill. 2017); *Fauley v. Vetspecs, Inc.*, Case No. 15 C 2529; *Fauley v. Bio Health Solutions, LLC*, Case No. 15 C 2544; *Fauley v. C. Specialties, Inc.*, Case

Court finds that plaintiff's prior litigation history does not deem him unsuitable as a class representative.

To establish Article III standing, a plaintiff must have (1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). Merely asserting a statutory violation will not be enough to confer standing without a showing that such violation has resulted in a concrete injury. *Spokeo*, 136 S. Ct. at 1549.

Heska argues that plaintiff has no standing because he does not allege that he suffered a concrete injury; instead, he merely alleges a statutory violation of the TCPA's opt-out notice requirement. Plaintiff responds that the TCPA requires fax advertisements to contain a compliant opt-out notice and that a denial of that information is a concrete injury for Article III standing purposes.

Several judges in this District have found that plaintiffs, such as the plaintiff here, have standing to sue on a TCPA claim of failure to provide the required opt-out notice. *See, e.g., Fauley v. Royal Canin U.S.A., Inc.*, No. 15 C 2170, 2017 WL 2955351, at *2 (N.D. Ill. July 10, 2017) ("[I]n the absence of an adequate opt-out notice, plaintiff 'suffered an injury the moment he received the fax,' and thus has standing to sue") (citations omitted); *McCombs, D.P.M., LLC*, No. 15 C 10843, 2017 WL 1022013 (N.D. Ill. March 6, 2017) ("in pleading the receipt of an unsolicited fax advertisement in violation of the TCPA, Plaintiff has alleged a particularized and concrete injury sufficient to satisfy Article III and confer subject matter jurisdiction"). The

---

No. 15 C 5581; *Fauley v. Virbac Corporation*, 15 C 9125; *Fauley v. Fetch, Inc.*, 15 C 9406; *Fauley v. Wedgewood Village Pharmacy, Inc.*, 16 C 3996; and *Fauley v. GerMed Inc.*, Case No. 18 C 65.

Court agrees with the reasoning of its colleagues and finds that plaintiff has sufficiently alleged that he suffered a concrete harm such that he has standing to sue.

**Counsel.** When determining whether the proposed counsel is adequate, a court must consider counsel's prior work identifying or investigating potential claims in the action; experience in handling class actions, other complex litigation, and similar types of claims; knowledge of the applicable law; and resources. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B); *see also Physicians Healthsource, Inc. v. Allscripts Health Sols.*, Inc., 254 F. Supp. 3d 1007, 1029 (N.D. Ill. 2017), *reconsideration denied*, Case No. 12 C 3233, 2017 WL 4682734 (N.D. Ill. Oct. 18, 2017).

A review of counsel's qualifications indicates that counsel is experienced, knowledgeable in TCPA cases, competent, and has sufficient resources to pursue this litigation. The Court finds that plaintiff's counsel is capable of adequately representing the interests of the class members.

## III. Rule 23(b)(3) Requirements

Plaintiff seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014).

### a. Predominance

The predominance requirement is related to commonality, but it is "far more demanding." *Amchem Prod.*, 521 U.S. at 623-24. This requirement is met when a common nucleus of operative facts and issues underlies the claims brought by the proposed class. *See Messner*, 669

F.3d at 815. "Predominance of issues common to all class members, like the other requirements for certification of a suit as a class action, goes to the efficiency of a class action as an alternative to individual suits." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2012). It is a qualitative, not a quantitative concept. *Id*.

As noted above, plaintiff says that this case involves four main questions: (1) whether the faxes are "advertisements"; (2) whether Heska is the "sender" of the faxes; (3) whether the faxes contain the required opt-out notice, and (4) appropriate remedies. The Court finds that common issues predominate in this matter. Heska resists this conclusion based on certain evidence it says shows that issues of consent predominate.

In TCPA cases, "[c]ourts determine whether issues of individualized consent defeat commonality and predominance . . . on a case-by-case basis after evaluating the specific evidence available to prove consent." *Physicians Healthsource, Inc. v. A-S Medication Sols.*, LLC, 318 F.R.D. 712, 725 (N.D. Ill. 2016). When a defendant presents specific evidence showing that a significant percentage of the putative class consented, issues of individualized consent predominate. *See Jamison v. First Credit Servs., Inc.,* 290 F.R.D. 92, 106-07 (N.D. Ill. 2013). Courts have refused to certify a class when the Court would be required to conduct a series of mini-trials to determine whether a putative class member provided a defendant with prior express permission. *See Brodsky*, 269 F. Supp. 3d at 848 (internal citations omitted). However, if the defendant fails to set forth specific evidence and instead only makes vague, speculative assertions about the consent, then individualized issues of consent do not predominate. *Jamison,* 290 F.R.D. at 107.

Heska submits four types of evidence it says show prior express permission: (1) the results of Heska's "re-confirmation campaign"; (2) a sample from a customer database indicating

14

that customers consented to receiving certain promotional materials via fax; (3) new "consent reconfirmation and statement" forms from four individuals; and (4) testimony from Heska employees that Heska has a general practice of sending faxes only with customer consent. Plaintiff challenges the admissibility of each.

First, regarding Heska's purported "reconfirmation campaign," plaintiff argues, in part, that this evidence should be barred because the reconfirmation campaign was misleading. The Court agrees with the Magistrate Judge that Heska's scripts were misleading because Heska customers were "not informed that their responses to Heska's seemingly innocuous questions may affect their rights in a pending lawsuit[2]." (Dkt. 89, p. 9.) And this is precisely what Heska is arguing here—that these customers have forfeited any claim related to this suit. Because the script was misleading and had the potential to affect class members' rights in this suit, the Court will not consider this evidence to defeat predominance.

Second, with regard to the customer database, plaintiff argues that Heska's proof of consent from the customer database should be barred because Heska did not timely produce it during discovery in violation of Rule 26(e). Heska waited five months after the close of discovery to produce this information to plaintiff. Rule 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion. . .unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Heska has not shown that this late disclosure was substantially justified or is harmless. The Court is disinclined to allow

---

[2] Notably, Heska did not object to the Magistrate Judge's finding and indeed conceded it. (Dkt. 95, p. 2.) Heska then made an unsuccessful request for court approval of a revised script informing Heska customers of the pending suit. (Dkt. 111.)

this evidence. But, even if the Court considered this evidence, it does not appear to show that Heska customers gave prior express permission to receive all forms of fax advertisements.

Third, plaintiff argues that the consent re-confirmation and statement forms should be time-barred because Heska did not produce the forms in discovery but instead produced it for the first time in its response brief. The Court agrees and will not consider this evidence.

Fourth, as to Heska employee testimony, plaintiff says that this area of evidence is legally insufficient to satisfy Heska's burden to prove "prior express invitation or permission" because Heska did not document the claimed practice. Heska maintains that it has a general practice of requesting and confirming a customer's consent before sending a fax advertisement. (Dkts. 125-7 ¶ 3, 125-8 ¶ 3.) Heska says that the confirmation is often received orally during a phone call or in-person at a trade show. (Dkt. 125-7 ¶ 3.) This evidence is insufficient to show that Heska's sales force always or regularly employed this general practice. *See Physicians Healthsource*, 318 F.R.D. 712, 723 (N.D. Ill. 2016) (rejecting defendants' arguments that defendants' policy and practice of obtaining prior consent precluded class certification); *see also Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.*, 254 F. Supp. 3d 1007, 1037 (N.D. Ill. 2017) (same). Absent sufficient evidence to support its claim of prior express consent, Heska cannot show that individual issues of consent predominate over common issues of fact and law. Accordingly, the Court finds that predominance is satisfied here. If the parties later present substantial evidence of consent which might make a class action unwieldy, the Court could revisit this issue. *See Motorola Sec. Litig.*, 644 F.3d 511, 518 (7th Cir. 2011) ("a district court has the authority to modify a class definition at different stages in the litigation").

Plaintiff also asks this Court to strike Heska's affirmative defenses of "established business relationship" or "prior express permission," because its faxes lack complaint opt-out

16

notice.  Plaintiff relies on *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013) for the proposition that it does not matter which recipients consented or had an established business relationship with Heska if the faxes lacked a complaint opt-out notice.  This request is denied.  As noted above, the TCPA does not impose an opt-out requirement on solicited faxes.

**b.**     **Superiority**

Rule 23(b)(3) allows class certification if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  When looking at whether a class action is a superior method, the court may consider (1) class members' interests in individually controlling their own litigation; (2) the extent and nature of any already-pending litigation concerning the controversy; (3) the desirability of concentrating the claims in the particular forum; and (4) potential problems that could arise in managing the case as a class suit.  Fed. R. Civ. P. 23(b)(3)(A)–(D).

When weighing these elements, the Court finds that the superiority requirement is satisfied.  The proposed class represents thousands of essentially similar lawsuits, and addressing them in a single class-action suit would be an efficient use of judicial and party resources. *See Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008).  Accordingly, the Court finds that the proposed class satisfies the requirements of Rule 23's class certification requirements.

## CONCLUSION

For these reasons, plaintiff's motion is granted and the following class is certified:

> All persons or entities who were successfully sent one or more facsimiles regarding Heska Corporation's goods or services from March 12, 2011, through July 21, 2014, that either (1) contain no "opt-out notice" explaining how to stop future faxes or (2) contain an opt-out notice stating, "To unsubscribe from Heska's promotional faxes, please call 800-464-3752, ext. 4565 or fax (970) 619-3008, and indicate your clinic name and fax number."

17

The parties are directed to file a joint status report by September 7, 2018, informing the Court of their next intended steps.  Status hearing set for September 11, 2018 at 9:30 a.m.

**SO ORDERED.**                                    **ENTERED: August 24, 2018**

_____
**HON. JORGE ALONSO**
**United States District Judge**